**Donald H. McKUSH, Appellant,**

v.

**Margaret G. HECKER, as Personal Representative of the Estate of Harold J. Hecker, and Margaret G. Hecker, individually, Respondents.**

**No. C1–96–1981.**

Court of Appeals of Minnesota.

March 18, 1997.

Gretchen S. Schellhas, Robert D. Lucas, Rode, Lucas & Schellhas, P.L.L.P, Minneapolis, for Appellant.

Norbert B. Traxler, O'Neill, Traxler, Zard, Neisen & Morris, Ltd., New Prague, for Respondents.

Considered and decided by LANSING, P.J., and CRIPPEN, and PETERSON, JJ.

## OPINION

CRIPPEN, Judge.

In 1978, respondent Margaret Hecker and her late husband, Harold, sold a golf course site to Ross Stevens. Stevens resold the property to appellant Donald McKush in 1981. McKush agrees with respondents that he must honor a commitment of Stevens that Harold Hecker or his designees will have six free golf club memberships on the course. But appellant disputes the trial court's determination that the free membership agreement is a condition of title that also binds a future purchaser of the site. We reverse and remand.

## FACTS

The parties used three instruments in the 1978 Hecker–Stevens transaction. The first, a 1978 purchase agreement that calls for a subsequent contract for deed, contains an agreement, subject to a "specific plan" in a later agreement, that Stevens will provide the Heckers six free golf club memberships so long as the property is operated as a golf course, so that the Heckers and their immediate family can enjoy free use of the course "during the term of the Contract for Deed." [1] A subsequent contract for deed, dated November 1, 1978, contains no provision on the golf club memberships, but an Asset Purchase Agreement of the same date addresses the subject. This agreement states that "so long as Buyer operates a golf course" on the site, "he" will deliver six free memberships for Harold Hecker or his designees and that Stevens will also require that these privileges be extended by "his buyer" as a condition of any resale of the course by Stevens.[2]

1. In its entirety, the relevant clause stated:

The buyer [Stevens] agrees that upon the signing of the Contract for Deed, the Buyer shall deliver to the Seller six golf club memberships to the Seller [Harold and Margaret Hecker]. Memberships shall be issued to the Seller each and every year so long as the property is maintained and operated as a golf course. The specific plan for the issuance of such memberships shall be completed prior to November 1, 1978. The purpose

of the issuance of six memberships is so that the Seller and his immediate family may continue to use the golf course without charge during the term of the Contract for Deed.

2. The provision states as follows:

(j) So long as Buyer [Stevens] operates a golf course on the real property to be purchased and sold pursuant to this Agreement, he shall deliver to and keep in effect for Seller [Harold Hecker] (or his designees) six golf club memberships,

The 1981 Stevens–McKush purchase agreement provides that the buyer will "honor [Stevens's] commitment" to Harold Hecker for free playing memberships. A companion contract for deed was silent on the subject and provided that appellant was buying according to the "terms and conditions [of the 1978 Hecker–Stevens] Contract for Deed." The golf membership agreement also was not mentioned in a 1990 amendment of the original Hecker contract for deed. Stevens conveyed his interest in the course to appellant in 1992, and the quit claim deed was silent on the subject of the Hecker golf memberships.

In 1995, respondents rejected appellant's tender of payment on the 1978 contract for deed because appellant refused to execute an instrument to confirm the golf club membership obligation as a covenant running with title to the land. The contract was finally closed subject to the right to litigate the claim for a covenant. In appellant's subsequent specific performance suit, the trial court held that the free membership provision stated in the November 1978 purchase agreement was a condition precedent for any future sale of the course by appellant. Appellant challenges this holding but does not dispute the further trial court conclusion that he must honor the free membership commitment during the time he owns the course.

## ISSUE

Did respondents effectively create a restrictive covenant that encumbers the title to appellant's property with an obligation to provide certain free membership privileges so long as the property is used as a golf course?

## ANALYSIS

The trial court reached its conclusion in the case by rejecting arguments of appellant (a) that the 1978 purchase agreements were merged into respondents' contracts for deed on the property, which were silent on free golf memberships, and (b) that appellant, as a matter fact, had no actual notice of the nature or extent of the 1978 membership commitments, and therefore, as a matter of law, was not bound to a covenant agreement that was not memorialized on the Torrens Certificate of Title for the property.

In its determination on the Torrens question and its further conclusion that appellant was bound to a covenant as an assignee of Stevens, the trial court disregarded appellant's contentions that the 1978 purchase agreements did not, as a matter of law, state an agreement affecting owners other than Stevens and appellant. Based on his legal argument regarding the nature and extent of the 1978 agreement, appellant argued that his obligations as a purchaser were limited and that there was never an agreement for the creation and execution of a covenant document that could be memorialized on the Certificate of Title.

Because appellant's characterization of the 1978 agreement has merit, we reverse the trial court's determination and remand for issuance of the court's order for a judgment of specific performance according to the demand pleaded by appellant in his complaint, but with recognition of appellant's obligation during the tenure of his ownership to honor respondents' free membership rights. Having reached this conclusion by interpreting the 1978 agreement, we need not address arguments on merger, actual notice, or on the question of whether appellant was an assignee of Stevens or a good faith purchaser. We also need not address appellant's further assertion that the claim of a restrictive covenant agreement conflicts with the Statute of Frauds.

Trial court legal conclusions and its rulings on mixed questions of law and fact are not binding on an appellate court but are subject to independent review. *Meyering v. Wessels,* 383 N.W.2d 670, 672 (Minn.1986). We determine the character of the 1978 agreements as a matter of law, without regard for conflicting evidence on the intent of the contracting parties.

■ Our decision is prompted by a construction of the terms of the 1978 purchase agreements and by the overriding principle

allowing Seller and his designees free playing privileges at said golf course. In the event that Buyer resells the real property to be purchased and sold pursuant to this Agreement for use as a golf course, he shall require as a condition of such sale that his buyer accord to Seller and his designees such free playing privileges, so long as the property shall be operated as a golf course.

of law that agreements restricting the free use of property are strictly construed against limits on use.

> [W]e must keep in mind a rule frequently enunciated in this state to the effect that inasmuch as the law leans in favor of the unrestricted use of property a strained construction will not be adopted in favor of restrictions. There is much authority that covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. Such restrictions will not be aided or extended by implication or enlarged by construction and doubt will be resolved in favor of the unrestricted use of property.

*Mission Covenant Church v. Nelson,* 253 Minn. 230, 233, 91 N.W.2d 440, 442 (1958) (citations omitted) (affirming the denial of restrictions matching those stated in deeds on adjoining parcels and rejecting evidence of a general plan for several tracts).

In their 1978 sale agreements, respondents obtained an agreement that expressly bound their buyer, Stevens, and his buyer. They expressly acknowledged a purpose of creating free membership rights for the duration of a contract for deed, the contract which was closed here in 1995. Equally as important, the agreements made no provision for a covenant running with the land and stated no plan or commitment to prepare and execute an agreement that would be memorialized on the Certificate of Title. These are not agreements for a restrictive covenant that bind successors to appellant's title.

At best, the 1978 purchase agreements involve an ambiguity by reason of references to a period "so long as" the property is operated as a golf course. It is not clear whether the parties intended that these clauses state the minimum term of privileges or merely limit the right for the protection of the buyer in the event of some other use of the property. In any case, the language does not effectively contradict other language on the term of the privileges or the absence of language effectively creating a restrictive covenant. We cannot give further significance to these clauses without offending the maxim already stated that doubts regarding agreements restricting the free use of property will be resolved in favor of unrestricted use.

## DECISION

The trial court's judgment is reversed and the case remanded on a mandate already stated in this opinion.

**Reversed and remanded.**