KRAMER and wife, Respondents, vs. NELSON and wife, Appellants.

*March 10—April 6, 1926.*

*Covenants: Restrictions as to use: General scheme of improvement: Re-arrangement of lots: To whom restrictive covenant inures: Purchasers prior to restriction: Zoning ordinances: Laches: Perpetuities: Reversionary interest.*

1. A restrictive clause in a deed executed in pursuance of a general scheme for the purpose of preserving the character of real estate as residence property creates an equitable servitude in favor of all property owners included within the general scheme. p. 563.

Kramer v. Nelson, 189 Wis. 560.

2. The fact that the original scheme for preserving the residence character of property did not include a certain avenue did not prevent the owners from selling all the lots on such avenue for residence purposes and from inserting in the deeds such legal restrictions as they should deem proper.   p. 563.

3. Where lots originally exempted from the general restrictive scheme were later re-arranged and sold with the restrictive provisions inserted in other deeds, the restrictions in such deeds did not inure to the benefit of prior purchasers of restricted lots, but did inure to the benefit of purchasers of the re-arranged lots.   p. 564.

4. Purchasers of lots who knew of the express provisions restricting the property to residences were bound by such restrictions and could not repudiate them under a claim that at the time they purchased the street had become a business street.   p. 565.

5. A zoning ordinance which designated a street as a business street, but expressly provided that it did not interfere with, abrogate, or annul easements, covenants, or other agreements between the parties, did not govern as against deeds restricting certain lots to residences.   p. 565.

6. A deed from a corporation which provided that the land should revert to the grantor in case of violation of the restrictions was not void when executed, and the title granted was good, although the corporation has been dissolved for several years and is unable to convey the reversionary interest.   p. 566.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge.   *Affirmed.*

This was an action in equity to enjoin the defendants from violating building restrictions placed on the property by the owner of the original plat of Grant Park, in the city of Milwaukee.   Grant Park is bounded on the north by North avenue, on the south by Pabst avenue, and on the east by Thirty-ninth street.   Fortieth, Forty-first, and Forty-second streets run north and south in the plat.   All the lots on Forty-first street in the original plat were made to front on Forty-first street, with the exception of lots 1, 2, and 3, on the southwest corner of Forty-first street and North avenue, and lots 6, 7, and 8, on the southeast corner of Forty-first street and North avenue.   These were made to

front on North avenue.   Later lots 1, 2, and 3, and lots 6, 7, and 8, facing North avenue, were re-arranged so as to constitute lots facing Forty-first street.   The original owner of the plat was the West Side Land Company, a corporation, and it advertised the lots on Forty-first street for sale and sold the same for residence properties, including the re-arranged lots on the southeast and southwest corners of North avenue and Forty-first street.   Each and every deed of the lots so conveyed carried a building restriction providing, among other things, that the front line of any buildings erected on said premises should not be nearer the center of Forty-first street than forty-five feet.   In other words, Forty-first street being sixty feet wide, all buildings on Forty-first street had to be set back fifteen feet from the lot line.   It was further provided in said restrictions that no buildings should be erected on said premises the actual cost and value of which would be less than $2,500, and, after reciting several restrictions, contained this general provision: "or for any business detrimental to the interests of a first-class residence neighborhood, but shall be used for residence purposes only."

The defendants built a store building on the west fifty-five feet of the north thirty feet of lots 7 and 8, which approached Forty-first street nearer than fifteen feet, and which was in violation of the building restriction in their deed.

The court found for the plaintiffs and enjoined the defendants from maintaining a building on said premises in violation of the restrictions in the deed, and from the judgment entered thereon the defendants appealed.

For the appellants there was a brief by *McGovern, Lyons, Curtis, Devos & Reiss* of Milwaukee, and oral argument by *F. E. McGovern*.

*F. J. Lenicheck* of Milwaukee, for the respondents.

CROWNHART, J.   The general principles of law applicable
to this case are found in *Boyden v. Roberts*, 131 Wis. 659,
111 N. W. 701, to the effect that where a deed contains a
restrictive clause, executed in pursuance of a general scheme
for the purpose of preserving the character of real estate as
first-class residence property, such restriction will be held to
create an equitable servitude in favor of all the property
owners included within the general scheme.

At the outset the appellants make the claim that the gen-
eral scheme of the West Side Land Company was to provide
for two classes of property, that is, residence property and
business property; that the scheme so laid out, upon the.
basis of which the property was sold, provided that the lots
fronting on North avenue should be business property and
that those lots fronting on Forty-first street should be resi-
dence property.   The appellants claim that, this being the
general plan or scheme, the West Side Land Company had
no right to change the scheme and later re-block the lots on
the southeast and southwest corners of North avenue and
Forty-first street into residence property and to include in
the deeds thereof the building restrictions common to the
rest of the lots on Forty-first street.   The original plat and
the original scheme did not provide that all lots fronting on
North avenue should be sold for business properties; on the
contrary, the original scheme simply provided that "all lots,
except those fronting on North avenue and Lisbon avenue,·
will be sold for residence purposes only."   So in the original
scheme there were no building restrictions whatever on the
lots fronting on North avenue.   There was nothing in the
scheme whatever to prevent the owners of the plat from
selling all the lots on North avenue for residence properties
and to put in the deeds of the same such legal restrictions as
they should deem proper.

The original grantor, the West Side Land Company, sold

off most of the residence property in the restricted area, but "because at that time business property was not selling at all and residence property was," the company, in 1909, re-arranged lots 1, 2, and 3 on the southwest corner, and lots 6, 7, and 8 on the southeast corner of North avenue and Forty-first street, to make eight thirty-foot lots fronting on Forty-first street, and thereafter sold them as residence lots, the deeds containing the uniform restrictions inserted in the deeds of all other lots fronting on Forty-first street.

The plaintiffs bought the south thirty feet of the north sixty feet of lots 6, 7, and 8, block 2, on July 15, 1921, and subsequently, on October 5, 1921, the defendants bought the north thirty feet of lots 6, 7, and 8, block 2. The defendants also owned and lived on the south thirty feet of said lots at the time plaintiffs purchased their parcel of land through the agency of the defendant *George W. Nelson.*

· The appellants claim that the court erred in finding that the appellants' corner property was included as residence property in the general plan or scheme of the West Side Land Company for the improvement and development of Grant Park. It is true that lots 6, 7, and 8, block 2, were not included in the original general scheme for high-class residence property by the West Side Land Company in their plat filed in 1891, but these lots were found not desirable as business property and it was found that they were desirable as residence property; so in 1909 the company re-arranged the plat of these lots so as to have four lots face on Forty-first street, and sold the same as residence lots with identical restrictive provisions in the deeds as were inserted in the deeds of all the other lots on Forty-first street. While these restrictions in the deeds did not inure to the benefit of those persons on Forty-first street that had purchased their lots prior thereto, they did inure to the benefit of each of the purchasers of the particular four lots which had been re-arranged and sold with the restrictive provisions.

It was further claimed that the court should have found that North avenue had become a business street at the time the appellants purchased their property, and therefore the appellants acted within their rights in building as they did. It should be remembered that the appellants had purchased this property only a short time before, and that they knew of the express provisions in the deed and were bound by them. Not only this, but they owned the south thirty feet of these lots and had their residence thereon, and the deed to that property contained the same identical restrictions. The appellant *George W. Nelson,* acting as agent for the owner, sold the respondents their lot with the assurance that the building restriction ran straight through to North avenue. It does not lie within the rights of the appellants to repudiate the provisions in their own deed under such circumstances.

Again, it is claimed by appellants that the court erred in failing to find that the zoning ordinance had designated that part of North avenue as a business district, and that the zoning ordinance governed instead of the reservations in the deeds. Assuming that the zoning ordinance may lawfully change the use of property contrary to reservations in the deeds, but without so deciding, the answer to appellants' contention is that the zoning ordinance did not attempt to abrogate such restrictions. That ordinance provided, among other things: "It is not intended by this chapter to interfere with or abrogate or annul any easements, covenants, or other agreements between parties."

Again, the appellants contend that the court erred in failing to find that respondents were estopped in seeking equitable relief, on the ground that they did not timely assert their rights. The trial court found that the respondents made timely objection to the erection of the appellants' building. A careful review of the evidence shows that it amply sustains the trial court's finding in this respect.

It is also claimed that the plaintiffs violated the restrictions in their deed in that their porch extended three feet into the restricted area. Here, again, the court found to the contrary on what appears to be sufficient evidence, or rather upon a failure of the appellants to establish the fact by competent evidence. The court expressly found "that the plaintiffs had used their premises only for purposes consistent with said restriction."

Finally, it is contended that the court erred in failing to find as a conclusion of law that the restrictions contained in the deed from the West Side Land Company, under the circumstances of the case, unlawfully suspended the power of alienation of the property.

That deed provided that title to the land should revert to the grantor in case of the violation of such restrictions by the grantees. The West Side Land Company was dissolved in 1919 and has since ceased to exist. Therefore the appellants contend that there is no one to convey this reversionary interest and the power of alienation is forever suspended if the restriction is held valid.

It is not necessary to follow appellants' interesting argument further than to say that, whatever the present circumstances occasioned by the corporation ceasing to exist, the original deed was not void when executed, and the title granted thereby was good.

The subject of servitudes by way of restrictions in deeds has been fully considered recently by this court, and nothing further need be here added. *Roberts v. Gerber,* 187 Wis. 282, 202 N. W. 701; *Mueller v. Schier, ante,* p. 70, 205 N. W. 912; *Ward v. Prospect Manor Corp.* 188 Wis. 534, 206 N. W. 856; *Schneider v. Eckhoff,* 188 Wis. 550, 206 N. W. 838.

*By the Court.*—The judgment of the circuit court is affirmed.